UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JAMALL HENRY FALLS                                    CIVIL ACTION

VERSUS                                                NO. 19-161

NANCY A. BERRYHILL, ACTING                            SECTION "I" (2)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Plaintiff Jamall Henry Falls seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's claim for supplemental security income under Title XVI of the Act. 42 U.S.C. § 1382c. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2E(B).

I.    PROCEDURAL HISTORY

On November 17, 2015, Falls filed a Title XVI application for supplemental security income, alleging a disability onset date of October 24, 2015. (Tr. 12, 67, 187). After his claim was denied at the agency level, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on October 26, 2017, in New Orleans, Louisiana. (Tr. 37–66). Plaintiff appeared in person and was represented by counsel. Id. The ALJ issued a decision on January 18, 2018, finding that Falls was not disabled. (Tr. 12–20). Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied plaintiff's request on December 6, 2018, and the ALJ's decision became the Commissioner's final decision for purposes of this court's review. (Tr. 1–6).

Plaintiff filed his complaint in this court on January 10, 2019. Record Doc. No. 1. Falls timely filed his memorandum of facts and law on April 24, 2019. Record Doc. No. 10. Defendant timely filed her reply memorandum of facts and law on May 23, 2019. Record Doc. No. 11.

II.   STATEMENT OF THE ISSUE ON APPEAL

Plaintiff contends that the Commissioner made the following errors:

A.   The ALJ erred at Step Three of the sequential evaluation in failing to address any medical opinions in her finding that plaintiff did not meet the criteria of Paragraph B of Listing 12.03.

B.   Substantial evidence does not support the ALJ's finding at Step Three of the sequential evaluation.

Record Doc. No. 10 at pp. 8–10.

III.   ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following findings relevant to the issue on appeal:

1.   Plaintiff has not engaged in substantial gainful activity since November 17, 2015.

2.   Falls has the severe impairments of schizophrenia and cannabis abuse.

3.   He does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4.   Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limitations: plaintiff is limited to performing tasks with a Specific Vocational Preparation level of two or less, with no interaction with the public, no more than occasional interaction with co-workers or supervisors, no more than occasional changes in the work setting or routine and no driving as part of his work duties.

5.      Plaintiff has no past relevant work.

6.      Based on plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform, including cleaner, general office clerk and packer.

7.      Falls was not under a disability since November 15, 2015.

(Tr. 12–20).

IV.     <u>ANALYSIS</u>

A.      <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. <u>Richard ex rel. Z.N.F. v. Astrue</u>, 480 F. App'x 773, 776 (5th Cir. 2012) (citing <u>Perez v. Barnhart</u>, 415 F.3d 457, 461 (5th Cir. 2005)); <u>Stringer v. Astrue</u>, 465 F. App'x 361, 363 (5th Cir. 2012) (citing <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002)). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Richard ex rel. Z.N.F.</u>, 480 F. App'x at 776; <u>Stringer</u>, 465 F. App'x at 363–64; <u>Perez</u>, 415 F.3d at 461. This court may not reweigh the evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. <u>Halterman ex rel. Halterman v. Colvin</u>, 544 F. App'x 358, 360 (5th Cir. 2013) (citing <u>Newton</u>

3

v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364. The

Commissioner, rather than the courts, must resolve conflicts in the evidence. McCaskill v.

Dep't of Health & Human Servs., 640 F. App'x 331, 332–33 (5th Cir. 2016) (citing Perez,

415 F.3d at 461); Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders

v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence,

regardless whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503

U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its

entirety to determine the reasonableness of the decision reached and whether substantial

evidence supports it. Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez,

415 F.3d at 461). Any findings of fact by the Commissioner that are supported by substantial

evidence are conclusive. Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing

Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for supplemental security income, plaintiff

must show that he is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations

that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§

404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2016). The regulations include

a five-step evaluation process for determining whether an impairment prevents a person from

engaging in any substantial gainful activity.[1] Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F. App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. Id.

The claimant has the burden of proof under the first four parts of the inquiry. If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Alexander, 412 F. App'x 720–21; Perez, 415 F.3d at 461.

_____

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The court weighs four elements of proof when determining whether there is substantial evidence of disability: "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'" Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

At the ALJ hearing, Falls testified that he was 22 years old, five feet eleven inches tall and weighed 150 pounds. (Tr. 42). He stated that he had gained 30 to 40 pounds during the past two years. Id. Plaintiff said that he was single and had no children. (Tr. 42–43). Falls testified that he lived with his grandparents. (Tr. 43). He stated that he has no source of income. Id. Plaintiff said that he has health insurance and receives food stamps. Id. He testified that he gives the food stamps to his grandparents, who get food for him. Id. Falls testified that he has no driver's license and has never tried to obtain one in the past. Id. Plaintiff stated that he gets from place to place by receiving rides from his grandparents or occasionally taking the bus. (Tr. 44). He stated that the last time he took the bus was in 2015. Id.

Plaintiff testified that he graduated from high school. Id. He stated that he has not worked since October 24, 2015. Id. Falls said that after he finished high school, he attended Delgado Community College to study computer networking, but dropped out after completing his first semester. (Tr. 45).

Plaintiff stated that he started "self-medicating" by smoking marijuana in October 2015, and began "hearing voices." Id. He said that the voices in his head were "worse than I expected" and prompted him to visit University Medical Center ("UMC"). (Tr. 45–46). He said that he stayed at UMC for two weeks and was diagnosed with schizophrenia. (Tr. 46). Falls stated that after receiving his diagnosis, he began seeking treatment at a clinic. Id. Plaintiff testified that he began receiving Zyprexa at the clinic to treat his schizophrenia in November 2015. (Tr. 47).

Plaintiff described the voices in his head as "like hearing thoughts all over the place." Id. He stated that the voices talk to him like they know him personally, tell him to hurt himself and impede his ability to concentrate. (Tr. 47–48). He stated that he initially took his medication "off and on" because it made him drowsy, and that he would take it "only when I need it." (Tr. 48). He testified that he continued to smoke marijuana "a little bit" after he began taking the medication. Id. Falls said that at the time of the hearing, he was taking his medicine regularly. Id. He testified that he stills hears voices occasionally, but that the medication helps to "quell" them. Id.

Falls said that he does not have friends and does not socialize or leave the house often. (Tr. 49). He stated that during the day he watches television, but sometimes he has a hard time concentrating. Id. Plaintiff testified that he rarely attends church. Id. He stated that he stopped smoking marijuana in February 2017, which is the last time he tested positive for marijuana in a drug test. Id. He said that in February 2017, he only smoked "a little"

marijuana about once per week "just to see how it helps out with the medicine . . . [to] help out my situation, with schizophrenia, the cause of it." (Tr. 50–51).

Falls testified that he previously worked part-time as an usher in the Superdome and worked about one day per week. Id. He stated that he visits the Metropolitan Health Clinic every three months. (Tr. 51). Plaintiff said that his condition is improving, unless he neglects to take his medicine. Id.

Falls testified that he does not know if he could deal with having a boss because he has not been working recently. Id. He stated that he does not do anything that requires him to concentrate or read. Id. Plaintiff said that sometimes he needs to be told or reminded to perform daily tasks like bathing and eating, and noted that he "can't concentrate very often." (Tr. 51–52). He stated that the voices in his head present themselves as "regular shadows." (Tr. 52). He stated that he used to feel like people were "out to get [him]," but regularly taking his medicine helps mitigate his paranoia. Id. Falls said that he does not get into fights. Id. Plaintiff testified that he does not attend family gatherings. (Tr. 53).

Plaintiff reiterated that the last time he used marijuana was February 2017. Id. He stated that when he used marijuana, his hearing of voices and seeing of shadows increased. Id. Falls said that when he used marijuana the voices would get louder and tell him to hurt himself. (Tr. 54). He stated that he listened to the voices but never obeyed what they told him to do. Id. He reiterated that taking his medication helps with the voices by helping him sleep and taking away his pain. Id. He testified that he sleeps eight hours per night on average and occasionally wakes up once or twice in the middle of the night. (Tr. 54–55). He stated that

8

he takes his "pill" whenever he needs it. Id. He said that when he wakes up in the middle of the night, he usually stays awake because he has had "a decent amount of sleep" at that point in the night. (Tr. 55). Plaintiff testified that when he wakes up in the middle of the night, it is usually around 2:00 or 3:00 a.m, but this does not happen very often. Id. He stated that he wakes up in the middle of the night rarely, only once or twice per month. (Tr. 56). Plaintiff testified that on all other nights, he sleeps through the night without issue. (Tr. 57).

Falls testified that when he takes his medication and refrains from using marijuana, he does not have suicidal ideation, does not think about hurting others and does not hear or see things that are not actually there. Id. He stated that at the time of hearing, he was not hearing voices or seeing shadows often and attributed the decrease in his symptoms to taking his prescribed medication. Id. He noted that the last time he heard voices or saw shadows was sometime in the summer of 2017. Id.

Plaintiff stated that he gets along with his grandparents well and that his relationship with his brother is "okay." Id. He testified that he does not get into fights or verbal arguments with his grandparents or brother. (Tr. 58). Falls said that has no problems getting along with other people but that he "barely socialize[s]." Id.

Falls testified that on a typical day he sits around and watches television. Id. He stated that he "can't do much" because he will "have to concentrate." Id. Plaintiff said that he has difficulty concentrating because of his schizophrenia. Id. He stated that drowsiness is a side effect of his medication. (Tr. 59). He testified that he watches the news and football on television and mostly is able to follow along with a 30-minute news program. Id. He stated

9

that about once a month he is unable to follow along with a 30-minute program and that when this happens he stops concentrating and just lies down. (Tr. 59–60).

Falls stated that since he began taking his medication, he only needs to be reminded to perform daily activities such as bathing and grooming about once a month. (Tr. 60). He said that once he receives the reminder, he performs the task. Id. He stated that when he was hospitalized for schizophrenia, he had to be reminded more often. Id.

Falls testified that he is unable to work because of his schizophrenia and his trouble concentrating in conversational scenarios. (Tr. 61). He stated that if he had a job that did not require regular conversations with others, such as placing lids on jars on a conveyor belt, then he could perform such a job full-time. Id.

C.    Vocational Expert Testimony

Vocational expert Mary Catherine Elvir testified at the hearing. (Tr. 62). The ALJ posed a hypothetical of an individual of plaintiff's age, education and lack of significant work history who can perform work at all exertional levels, limited to performing tasks with a Specific Vocational Preparation level of two or less, no interaction with the public, occasional interactions with co-workers and supervisors, occasional changes in work setting or routine and who could not tolerate driving as part of work duties. (Tr. 63). Elvir stated that such an individual could perform multiple jobs in the national economy such as janitor, cleaner and general office clerk. (Tr. 63–64).

The ALJ posed a second hypothetical of an individual with the same qualifications and limitations as the first hypothetical, with the additional limitation of needing to be off-

task at least 20% of the day based on symptom exacerbations. (Tr. 64). Elvir stated that such a person could not perform any work in the national economy.(Tr. 65).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the evidence in her decision. (Tr. 12–20). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

The ALJ properly found that plaintiff's impairments did not meet the criteria of Paragraphs B or C of Listing 12.03, and her findings are supported by substantial evidence.

Plaintiff's two assignments of error argue that the ALJ erred at Step Three of the sequential evaluation in failing to address record medical evidence in her finding that plaintiff's impairments did not meet the criteria of Paragraph B of Listing 12.03 and that this finding is not supported by substantial evidence. Record Doc. No. 10 at pp. 8–10. Plaintiff further argues that the ALJ's finding is "unsupported" as to Paragraph C of Listing 12.03. Id. at p. 8. Because these issues pertain to the same step in the sequential evaluation, they will be addressed together.

Whether an impairment or combination of impairments meets a listing is a medical question that can be answered only by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); McCuller v. Barnhart, 72 F. App'x 155, 158 (5th Cir. 2003); Selders v. Sullivan, 914 F.2d 614, 619 (5th Cir. 1990); McKnight v. Astrue, 2008 WL 4387114, at *3 (W.D. La.

Aug 15, 2008), report & recommendation adopted, 2008 WL 5746939 (W.D. La. Sept. 23, 2008), aff'd, 340 F. App'x 176 (5th Cir. 2009). "The specified medical criteria [of a listing] are designed to be demanding and stringent because they lead to a presumption of disability[,] making further inquiry unnecessary." Anderson v. Astrue, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing Sullivan v. Zebley, 493 U.S. 521, 532 (1990); Falco, 27 F.3d at 162). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531 (citing 20 C.F.R. § 416.926(a); SSR 83-19, at 91) (emphasis in original). "The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination." Selders, 914 F.2d at 619.

Listing 12.03 ("Schizophrenia Spectrum and Other Psychotic Disorders") has three paragraphs – A, B and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03 (effective August 22, 2017 to March 13, 2018). To meet the requirements of Listing 12.03, plaintiff must show that he meets paragraphs A and B or paragraphs A and C. Id. Paragraph A of Listing 12.03, as it was in effect on the date of the ALJ's decision, requires medical documentation of delusions or hallucinations, disorganized thinking (speech), or grossly disorganized behavior or catatonia. Id. § 12.03(A).

Paragraph B of Listing 12.03, as it was in effect on the date of the ALJ's decision, requires at least one extreme or two marked limitations in the areas of understanding,

remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. Id. § 12.03(B). A "marked" limitation means the claimant's functioning in this area independently, appropriately, effectively and on a sustained basis is seriously limited. Id. § 12.00(F)(2)(d). An "extreme" limitation is the inability to function in this area independently, appropriately, effectively and on a sustained basis. Id. § 12.00(F)(2)(e).

Paragraph C of Listing 12.03, as it was in effect on the date of the ALJ's decision, requires a medically documented history of a mental disorder during a period of at least two years, accompanied by evidence of ongoing medical treatment, mental health therapy, psychosocial support(s), or highly structured setting(s) that diminishes the symptoms and signs of the mental disorder, and marginal adjustment to adapt to changes in one's environment. Id. § 12.03(C).

Although the ALJ did not explicitly reference Paragraph A in her decision, the substance of the decision and the medical records indicate that plaintiff meets the Paragraph A criteria, based on the extensive medical documentation of plaintiff's delusions, hallucinations and resulting schizophrenia diagnosis, which necessitated his in-patient hospitalization at UMC and subsequent out-patient treatment. (Tr. 17–19, 306–468).

Despite the documentation of hallucinations and delusions, the ALJ found that plaintiff's impairments did not meet or medically equal Listing 12.03 because he did not meet the criteria of Paragraph B or C. (Tr. 14–15). Plaintiff argues that his medical records include evidence "directly relevant to this issue of Paragraph 'B', and the ALJ's opinion ignored this

13

evidence on its face" in failing to cite any of plaintiff's medical records in reaching her Paragraph B finding. Record Doc. No. 10 at pp. 9–10. Plaintiff explicitly states in his memorandum that he is not addressing the ALJ's finding regarding Paragraph C, correctly noting that satisfying Paragraph C is not "not a necessary prong" to meeting or medically equaling Listing 12.03. Id. at p. 8. However, because plaintiff argues that the ALJ's Paragraph C finding is "unsupported," the ALJ's Paragraph B and Paragraph C findings will be addressed. Id.

"[T]he ALJ is not always required to do an exhaustive point-by-point discussion" of the evidence at Step Three, but in order to reach a conclusion subject to "'meaningful judicial review'" the ALJ must identify the listed impairment for which the plaintiff's symptoms fail to qualify and provide an explanation for her conclusion that the plaintiff's symptoms are "insufficiently severe to meet any listed impairment." Audler, 501 F.3d at 448 (quoting Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996)).

The ALJ's decision clearly states that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of Listing 12.03. (Tr. 14–15). Although the ALJ did not provide exhaustive discussion of the evidence in her analysis of the Paragraphs B and C criteria at Step Three, the substance of the decision sufficiently addresses these criteria, with appropriate medical record citations. (Tr. 14–19). The ALJ engaged in "careful consideration of the entire record," provided sufficient explanations for her findings that plaintiff's symptoms do not meet the Paragraph B or C criteria, and these findings are supported by substantial evidence. Id.

As to the Paragraph B criteria, the ALJ found that plaintiff had only a mild limitation in understanding, remembering and applying information. (Tr. 14–15). The ALJ based her finding on treatment notes that plaintiff is able to follow one or two-step instructions, carry out tasks, ask and answer questions, provide his medical history to medical providers and demonstrate "adequate insight into his condition." Id. The medical evidence is consistent with and supports the ALJ's finding. When plaintiff was admitted to UMC for his in-patient stay on October 22, 2015, Dr. Tracy Leigh LeGros noted that plaintiff "speaks well and reads well." (Tr. 312). Upon discharge from UMC, plaintiff "verbalized understanding" of the requirements expected of him following his hospital stay. (Tr. 437). A psychiatric evaluation on plaintiff performed by Dr. Eric S. Kramer on December 8, 2015, reflects plaintiff's logical thought process and associations, unremarkable stream of consciousness, non-psychotic thought content, good memory and fair intellect, insight and judgment. (Tr. 465–66). A psychiatric evaluation performed by licensed clinical social worker Jacqueline Glorioso on February 4, 2016, made findings consistent with Dr. Kramer's report. (Tr. 488). A mental residual functional capacity assessment performed by Dr. Scuddy F. Fontenelle on June 25, 2017, indicates that plaintiff displays low-average to average intelligence and average intellectual functioning. (Tr. 520). A residual functional capacity assessment completed by Dr. Lisette P. Constantin on February 1, 2016, indicates that plaintiff has no understanding or memory limitations. (Tr. 74).

Plaintiff's hearing testimony is consistent with the medical evidence and supports the ALJ's finding. Falls testified that he completed high school and one semester of community

college in computer networking. (Tr. 45). As noted in the ALJ's decision, plaintiff's testimony reflects that he possesses an adequate understanding of his medical condition. (Tr. 15). Plaintiff testified that since he began taking his prescribed schizophrenia medication, he only needs to be reminded to perform daily activities about once a month, which supports the ALJ's conclusion that "his daily functioning does not require significant assistance or reminders." (Tr. 15, 60). Thus, the medical evidence demonstrates that the ALJ did not err in finding that plaintiff displayed neither an extreme nor a marked limitation in understanding, remembering and applying information.

As to interacting with others, the ALJ concluded that plaintiff has only a moderate limitation, based on medical evidence of plaintiff's "healthy rapport" with medical providers. (Tr. 15). The medical evidence is consistent with and supports the ALJ's finding. During his in-patient stay at UMC, plaintiff engaged in discussions with his medical providers concerning his condition, medications and post-hospitalization employment goals; participated in a UMC community meeting when prompted; adhered to group rules; and was non disruptive. (Tr. 428–31, 433–35). Dr. Bradley Todd Peet noted in plaintiff's November 9, 2015 UMC discharge summary that upon admission to UMC, plaintiff was "isolative and not interacting with peers;" however, after being prescribed Zyprexa, plaintiff "continued to improve and affect became somewhat brighter over the course of hospitalization." (Tr. 316). Dr. Peet further stated that plaintiff "became less isolative and was more socially interactive" during the course of his stay at UMC. Id. Psychiatric evaluations by Dr. Kramer and social worker Glorioso reflect plaintiff's cooperative attitude, appropriate-to-flat affect, euthymic-

to-relaxed mood, good-to-fair eye contact, normal alertness and exhibition of no risk of harm to himself or others. (Tr. 465). Dr. Constantin's residual functional capacity assessment indicates that plaintiff had no social interaction limitations and that he "can relate to supervisors, peers and customers on a superficial work basis." (Tr. 74).

Plaintiff's hearing testimony is consistent with the medical evidence. He testified at the hearing that he gets along well with his grandparents and his relationship with his brother is decent. Id. (Tr. 57). He further stated that he does not get into fights or verbal arguments with his family. (Tr. 58). Although plaintiff's medical records and testimony indicate that he rarely initiates social contact with others, plaintiff stated that he does not have problems getting along with other people. Id. Moreover, the vocational expert testified that plaintiff could find multiple jobs in the economy that comport with plaintiff's introverted nature. (Tr. 63–64). The medical evidence demonstrates that although plaintiff displays lack of initiative in instigating social contact with others, the ALJ did not err in finding that plaintiff fails to indicate an extreme or a marked limitation in interacting with others.

As to concentrating, persisting or maintaining pace, the ALJ found that plaintiff had only a moderate limitation, based on medical treatment notes reflecting plaintiff's "adequate concentration." (Tr. 15). The medical evidence is consistent with and supports the ALJ's finding. Upon admittance to UMC for in-patient treatment, Dr. LeGros noted that plaintiff was "inattentive" and "withdrawn." (Tr. 314). However, after receiving his Zyprexa prescription, plaintiff was less "jittery," displayed brighter affect and engaged in increased social interaction. (Tr. 316). Plaintiff also attended a community group meeting at UMC

17

without disruption and in adherence with group rules. (Tr. 431). Upon discharge from UMC, plaintiff exhibited a calm and cooperative attitude, displayed good eye contact and maintained a linear, goal-directed thought process. (Tr. 317). Dr. Constantin's residual functional capacity assessment indicates that plaintiff is "[n]ot significantly limited" in carrying out short and simple instructions, making simple work-related decisions, maintaining attention and concentration for extended periods, performing activities within a schedule, and working alongside others without distraction. (Tr. 74). Dr. Constantin further noted that "[w]hen not abusing substances, [plaintiff] can understand, remember, and carry out simple and semi-complex (1–4 step) tasks w[ith] routine supervision." Id.

Plaintiff's hearing testimony is consistent with the medical evidence. Plaintiff testified at the hearing that the voices in his head associated with his schizophrenia impeded his ability to concentrate; however, when he regularly takes his medicine these voices are quelled. (Tr. 47–48). He testified that he watches the news and football on television and is mostly able to follow along with a 30-minute news program and is only unable to concentrate on such a program once a month. (Tr. 59–60). Plaintiff testified that his inability to work was based in part on having a "[h]ard time concentrating on the conversation" with his co-workers. (Tr. 61). However, plaintiff stated that he would be able to perform a full-time job that did not require regular conversations with others. Id. The medical evidence therefore demonstrates that the ALJ did not err in finding that plaintiff displayed neither an extreme nor a marked limitation in concentrating, persisting or maintaining pace.

As to adapting or managing himself, the ALJ found that plaintiff has only moderate limitation, based on medical evidence of the improvement in his condition between his UMC hospitalization and subsequent out-patient treatment, and treatment notes indicating the positive benefits of regularly taking his prescribed medication. (Tr. 15, 17). The medical evidence is consistent with and supports the ALJ's finding. Although plaintiff required in-patient hospitalization following his initial onset of schizophrenia, plaintiff's treatment notes reflect that once he began taking Zyprexa regularly, his ability to perform activities of daily living improved substantially. (Tr. 316). Upon discharge from UMC, plaintiff exhibited fair hygiene and grooming. (Tr. 317). Drs. Kramer and Elizabeth Schwarz and social worker Glorioso noted in their psychiatric evaluations that plaintiff had good hygiene and appearance. (Tr. 464, 478, 487). Dr. Constantin's residual functional capacity assessment indicates that plaintiff has no adaptation limitations and "can adapt appropriately to a work situation." (Tr. 74). Dr. Constantin noted that although plaintiff displays occasional sadness and anxiety, he is "able to think, communicate, act in [his] own interest and care for [his] own needs." (Tr. 76).

Plaintiff's hearing testimony is consistent with the medical evidence. Plaintiff testified that while he was hospitalized, he often had to be reminded to perform daily activities such as grooming and bathing; however, since he began taking his medication, he only needs to be reminded about once a month. (Tr. 60). The medical evidence therefore demonstrates that the ALJ did not err in finding that plaintiff displayed neither an extreme nor a marked limitation in adapting or managing himself. For these reasons, plaintiff's arguments that the

ALJ failed to cite record medical evidence in her Paragraph B analysis and that her Paragraph B finding is not supported by substantial evidence are without merit.

As to Paragraph C, the ALJ found that "the evidence fails to establish the presence of the 'paragraph C' criteria." (Tr. 15). The medical evidence is consistent with and supports the ALJ's finding. Plaintiff was first diagnosed with schizophrenia on October 22, 2015, when he was admitted to UMC for in-patient treatment. (Tr. 308). Plaintiff received out-patient medical treatment following his hospitalization. (Tr. 457–520). The most recent medical documentation of plaintiff's schizophrenia in the record is a mental residual functional capacity assessment completed by Dr. Fontenelle on June 25, 2017. (Tr. 520). Thus, plaintiff cannot demonstrate <u>at least</u> two years of medically documented history of schizophrenia, as required by Paragraph C.

Even if plaintiff had at least two years of documentation, the medical evidence does not reflect mere "marginal adjustment" in the symptoms of plaintiff's mental disorder following medical treatment, as required by Paragraph C. On the contrary, the medical evidence establishes that plaintiff's out-patient treatment and consistent taking of his prescribed medication resulted in achievement of significant adjustment in his schizophrenia symptoms.

The medical evidence supports the ALJ's conclusion that "after the claimant was hospitalized in 2015, he responded well to treatment and his hallucinations diminished <u>with medication compliance</u>." (Tr. 17) (emphasis added). Discharge notes from plaintiff's UMC hospitalization indicate that plaintiff's symptoms of hallucinations, inability to sleep,

drowsiness, lack of affect and social isolation substantially improved after he began taking Zyprexa. (Tr. 316). Mental residual functional capacity assessment and treatment notes completed by nurse practitioner Renata Weatherspoon in June 2017, noted that when plaintiff is non-compliant with his prescription regimen he has decreased ability to function and focus, social isolation, paranoia, hallucinations, delayed responses, difficulty remembering information limitations with working in a stressful environment. (Tr. 498, 500).

Plaintiff's hearing testimony is consistent with the medical evidence. Falls testified that his schizophrenia symptoms successfully were managed by consistently taking his prescribed medication and refraining from "self-medicating" by smoking marijuana. (Tr. 53–57). Plaintiff testified that when he regularly takes his medicine, the voices in his head are "quelled," he does not see shadows, has no suicidal ideation, has no desire to hurt others, his pain is mitigated, he sleeps well and rarely needs reminders to perform daily activities. (Tr. 48, 54, 57, 60). For these reasons, plaintiff's argument that the ALJ's Paragraph C finding is "unsupported" by the medical evidence is without merit.

Even if plaintiff had been found to meet the Paragraph B or C criteria, a medical condition that reasonably can be remedied by treatment or medication is not disabling. Muckelroy v. Astrue, 277 F. App'x 510, 511–12 (5th Cir. 2008) (citing Burnside ex rel. Burnside v. Bowen, 845 F.2d 587, 592 (5th Cir. 1988), abrogated on other grounds by Zebley, 493 U.S. at 527); Hebert v. Barnhart, 197 F. App'x 320, 323 (5th Cir. 2006) (citing Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988)); Leblanc v. Chater, 83 F.3d 419, 1996 WL 197501, at *3 (5th Cir. 1996); Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987). As

discussed above, the symptoms associated with plaintiff's schizophrenia are reasonably remedied when plaintiff regularly takes his prescribed medication, refrains from smoking marijuana and receives out-patient treatment. For the reasons stated above, plaintiff's assignments of error are without merit.

As she is required to do, the ALJ considered all of plaintiff's symptoms, including pain, and the extent to which the symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence in plaintiff's records. Luckey, 458 F. App'x at 326 (citing Scott, 770 F.2d at 485); Perez, 415 F.3d at 462. The ALJ is bound to explain her reasons for rejecting a claimant's subjective complaints, but "is not required to 'follow formalistic rules in [her] articulation.'" Hernandez v. Astrue, 278 F. App'x 333, 339 (5th Cir. 2008) (quoting Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994)). The ALJ has the responsibility to evaluate the credibility of the witnesses, Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2008) (quoting Falco, 27 F.3d at 164), and the consistency between the witness's testimony and the other evidence in the record. Thus, the ALJ's credibility evaluation is entitled to considerable deference by this court. McKnight v. Astrue, 340 F. App'x 176, 181 (5th Cir. 2009) (citing Newton, 209 F.3d at 459); Bedford v. Astrue, 236 F. App'x 957, 962 (5th Cir. 2007) (citing Newton, 209 F.3d at 459). The ALJ's explanation of her reasons for finding plaintiff not entirely credible or that plaintiff's testimony is inconsistent with the evidence as a whole is all that is required. Undheim v. Barnhart, 214 F. App'x 448, 450–51 (5th Cir. 2007) (citing 20 C.F.R. § 404.1529(c); Falco, 27 F.3d at 164); James J. Flanagan Stevedores, Inc. v. Gallagher, 219 F.3d 426, 430 & n.8 (5th Cir.

2000) (citing <u>Falco</u>, 27 F.3d at 163); <u>Godbolt v. Apfel</u>, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999). The ALJ complied with these standards in the instant matter.

The ALJ need not address each aspect of the record in detail. "[T]here will always be some evidence that is not specifically discussed in the Commissioner's decision. [The court's] review is limited to examining whether the decision to deny benefits is supported by substantial evidence in the record, and it is here. Likewise, the Commissioner used the proper legal standards to evaluate the evidence, and the ALJ adequately resolved inconsistencies in the record." <u>Giles</u>, 433 F. App'x at 251.

CONCLUSION

The ALJ used the appropriate legal standards to weigh and resolve conflicts in the medical opinion evidence. Her findings that plaintiff's impairments do not meet the Paragraph B or C criteria of Listing 12.03 are supported by substantial evidence.

**RECOMMENDATION**

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's appeal be denied and his complaint be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such

consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79

F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____13th_____ day of August, 2019.

_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2] <u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen (14) days.

24